1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# CENTRAL DISTRICT OF CALIFORNIA

10

# SOUTHERN DIVISION

11
12
13
14
15
16
17
18
19
20

| | |
|---|---|
| SEAN HARTRANFT, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TVI, INC., d/b/a SAVERS, INC., and APOGEE RETAIL, LLC.,<br><br>Defendants. | Case No.: SACV 15-01081-CJC-DFM<br><br>ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [Dkt. 99] |

21
22

## I.  INTRODUCTION & BACKGROUND

23
24

Plaintiff Sean Hartranft filed this putative class action against Defendants TVI,

25

Inc., d/b/a Savers, Inc., and Apogee Retail, LLC on July 9, 2018, pursuant to the Class

26

Action Fairness Act of 2005 ("CAFA").  (Dkt. 1 [Complaint].)  Defendant TVI, Inc.,

27

d/b/a Savers, Inc., is the largest for-profit thrift store chain in North America.  (Dkt. 61

28

[Operative First Amended Complaint, hereinafter "FAC"] ¶ 6.)  Defendant Apogee

Retail, LLC ("Apogee"), a subsidiary of Savers, Inc., solicits funds by telephone for Savers, Inc. and charities with which Savers, Inc. contracts.  (*Id*. ¶ 7.)  Apogee allegedly contacted hundreds of thousands of individuals, including Plaintiff, without their prior express consent to solicit donations on behalf of the Epilepsy Foundation of America.  (*Id*. ¶ 8.)  When Plaintiff asked how Apogee obtained his cell phone number, he was told they purchased lists of cell phone numbers from a third-party vendor.  (*Id*. ¶ 15.)

On July 8, 2015, Plaintiff filed this action on behalf of himself and all persons in the United States who received a "non-emergency telephone call" on their cell phone from Apogee by way of an automatic telephone dialing system or prerecorded voice.  (*Id*. ¶ 23.)  Plaintiff alleges that Defendants used an automatic telephone dialing system to contact individuals' cell phones without express consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq*. ("TCPA") and the Federal Communication Commission rules promulgated thereunder.  (*See generally id*.)

On May 4, 2017, the Court granted the parties' joint stipulation to stay the case to pursue a mediation before Honorable Edward A. Infante, a JAMS mediator well known for his success in resolving TCPA cases.  (Dkt. 73.)  The parties attended a day-long mediation with Judge Infante on July 6, 2017.  Due to Defendants' financial difficulties, it appeared that a common-fund settlement was not feasible.  (Dkt. 99-2 [Declaration of Douglas Campion, hereinafter "Campion Decl."] ¶ 2.)  Months later on August 31, 2017, the Court continued the stay, at the parties' request, so they could continue their settlement discussions.  (Dkt. 74.)  The parties continued to work with Judge Infante via telephone to negotiate an alternative to a common-fund settlement.

After protracted arms-length negotiations, the parties reached a solution.  Under the terms of the settlement, any class member who files an approved claim shall receive a certificate that can either be (1) redeemed for $75 in merchandise sold at any of

Defendants' 145 U.S. Savers or Value Village stores in the United States,[1] or (2) exchanged for a $25 check.  (Dkt. 99-2 Ex. 1 [Settlement Agreement].)  The settlement agreement also provides that Defendants shall pay the $420,000 in claims administration and related costs, $900,000 in Plaintiff's counsel's attorneys' fees and costs, and a $5,000 incentive payment to Plaintiff Sean Hartranft, all subject to this Court's approval.  (*See id.*)  Before the Court is Plaintiff's unopposed motion for preliminary approval of the settlement agreement.  (Dkt. 99-1 [hereinafter "Mot."].)  For the following reasons, the motion is **GRANTED**.[2]

## II.  ANALYSIS

### A.    Class Certification Requirements

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks provisional certification of a class for settlement purposes only.  The proposed settlement class is defined as

> [A]ll persons and entities to which, between and including July 1, 2011, to September 30, 2015, Apogee Retail, LLC made or attempted to make one or more telephone calls to their cellular telephones regarding donation solicitation on behalf of the Epilepsy Foundation of America.

(Settlement Agreement § 231.)  The settlement class consists of approximately 747,635 individuals across the United States, most of whom live reasonably near Defendants' stores.  (Campion Decl. ¶ 5; Mot. at 4.)

---

[1] These 145 stores are spread across the following states: Alaska, Arkansas, Arizona, California, Connecticut, Hawaii, Idaho, Illinois, Kansas, Massachusetts, Maryland, Minnesota, Missouri, North Dakota, New Hampshire, New Mexico, Nevada, New York, Ohio, Oregon, Pennsylvania, Rhode Island, South Dakota, Texas, Utah, Virginia, Washington, and Wisconsin.

[2] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for April 22, 2019, at 1:30 p.m. is hereby vacated and off calendar.

When a plaintiff seeks conditional class certification for purposes of settlement, the Court must ensure that the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003). Under Rule 23(a), the plaintiff must show the class is sufficiently numerous, that there are questions of law or fact common to the class, that the claims or defenses of the representative parties are typical of those of the class, and that the representative parties will fairly and adequately protect the class's interests. Under Rule 23(b), the plaintiff must show that the action falls within one of the three "types" of classes. Here, Plaintiff seeks certification pursuant to Rule 23(b)(3). Rule 23(b)(3) allows certification where (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1.    Rule 23(a) Requirements

### i.    Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members." *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602–03 (C.D. Cal. 2015); *see Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473–74 (C.D. Cal. 2012). According to Defendants' records of calling data, the class consists of 747,635 members. Accordingly, numerosity is satisfied.

### ii.   Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  The plaintiff must "demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  Rather, the plaintiff's claim must depend on a "common contention" that is capable of classwide resolution.  *Id.*  This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*

On behalf of himself and the putative class, Plaintiff asserts two counts for violations of the TCPA.  To bring a claim under the TCPA, a plaintiff must show "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent."  *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012).  Plaintiff's TCPA claims present several common questions, including: (1) whether Defendants used an automated telephone dialing system to call the class members' cell phones, and (2) whether the class members gave prior express consent to those calls.  Those questions are central to each class member's claims and their resolution will determine, "in one stroke," whether Defendants violated the TCPA.

### iii.   Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Representative claims are "typical" if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiff and the putative class members' claims arise from the same alleged course of conduct: that Defendants called the cell phones of individuals without their express prior consent to solicit donations for the Epilepsy Foundation of America.   Accordingly, Plaintiff's claims are "reasonably coextensive" with those of the class members.

### iv.   Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This factor requires (1) a lack of conflicts of interest between the proposed class and the proposed representative plaintiff, and (2) representation by qualified and competent counsel that will prosecute the action vigorously on behalf of the class.  *Staton*, 327 F.3d at 957.  The concern in the context of a class action settlement is to ensure that there is no collusion between the defendant, class counsel, and class representatives to pursue their own interests at the expense of the interests of the putative class.  *Id*. at 958 n.12.

There is no evidence of a conflict of interest between Plaintiff and the putative class.  Plaintiff's claims are identical to those of the class.  He has every incentive to vigorously pursue those claims on behalf of himself and the class.  Indeed, Plaintiff rejected an early Rule 68 individual offer of judgment because it did not provide any relief to the class.  (Campion Decl. ¶ 24.)  Nor is there any evidence that Plaintiff's counsel will not adequately represent or protect the interests of the class.  The Law Offices of Douglas J. Campion, APC, the Law Offices of Michael P. Sousa, APC, and Bisnar & Chase LLP have extensive experience litigating class actions, including actions for violations of the TCPA.  (*Id*. ¶ 19; Dkt. 99-3 [Declaration of Jerusalem F. Beligan] ¶ 13; Dkt. 99-4 [Declaration of Michael P. Sousa] ¶¶ 5–8.)  Counsel have extensively litigated this matter, leading to the present settlement agreement.  The record indicates that they have done so capably and adequately.

## 2.    Rule 23(b)(3) Requirements

In addition to the requirements of Rule 23(a), Plaintiff must satisfy the requirements of Rule 23(b)(3).  Under Rule 23(b)(3), a plaintiff must demonstrate that common questions "predominate over any questions affecting only individual members."  The predominance requirement overlaps with Rule 23(a)(2)'s commonality requirement, but is a more demanding inquiry.  *Hanlon*, 150 F.3d at 1019.  The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues."  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).  The plaintiff must show that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1191 (2013).  In TCPA cases, predominance "primarily turns on whether a class-based trial on the merits could actually be administered."  *Connelly v. Hilton Grand Vacations Co.*, 294 F.R.D. 574, 577 (S.D. Cal. 2013).

Plaintiff has shown that questions common to the putative class predominate over any questions affecting only individual members.  The central question is whether Defendants called class members' cell phones without their prior consent.  That question can be resolved using the same evidence for the class members, as it is based on Defendants' own records and technology.  According to Plaintiff, information acquired in discovery indicated "how certain dialing lists were deficient in their securing prior express consent form persons to be called, the type of dialing systems used and information about consent."  (Campion Decl. ¶ 9.)  Because the putative class members' cell phone numbers were purchased from third parties, there is no evidence that the issue of consent will require individualized inquiries.  *See Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 629 (S.D. Cal. 2015).

Class actions certified under Rule 23(b)(3) must also be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court must consider four non-exclusive factors in evaluating whether a class action is the superior method for adjudicating plaintiff's claims: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class, (3) the desirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely to be encountered in the management of a class action.  *Id.*

The vast majority of the putative class members are presumably unaware that their rights may have been violated.  Although an individual alleging violation of the TCPA can seek up to $1,500 in damages for each willful violation, there is significant cost and effort required for the average individual to bring a suit.  *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").  Alternatives to a class action are either no recourse for the hundreds of thousands of individual class members, or a multiplicity of suits resulting in an inefficient administration of justice.  Given the substantial overlap in evidence and the desirability of concentrating litigation of the claims of a nationwide class in one forum, the Court finds that the superiority requirement is met.  Plaintiff's proposed class is appropriate for provisional certification under Rules 23(a) and 23(b)(3).

## B.    Fairness of the Proposed Settlement

Plaintiff also seeks preliminary approval of the settlement agreement.  Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, reasonable, and accurate."  *Staton*, 327 F.3d at 959 (quoting *Hanlon*, 150 F.3d at

1026).  To determine whether this standard is met, a district court must consider a number of factors, including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement."  *Id.* (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).  At the preliminary approval stage, a full "fairness hearing" is not required.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  Rather, the inquiry is whether the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *Id*.

### 1.    Amount Offered in Settlement

The settlement agreement provides class members who submit a claim will receive a certificate redeemable for either $75 in goods from Defendants' 145 U.S. Savers or Value Village stores or a check for $25.  If a claimant opts for the first option, the $75 must be used in one visit.  However, there is no requirement that a claimant pay any of his or her own money in order to redeem the $75 value.  Nor are there any restrictions on the types of products for which the $75 may be used.  The inventory of used goods at Defendants' stores is all priced below $75.  (Dkt. 99-6 [Declaration of Scott Estes] ¶ 4 [noting that items sold in Defendants' stores are "generally less than $5"].)  Further, the $75 certificate is freely transferrable and has no expiration date.  If the claimant instead chooses to redeem the certificate for a $25 check, he or she must make a request via telephone, mail, or online within 90 days after receiving the certificate.  The check will be issued within fourteen days of the claimant's exercise and will be valid for 180 days.

Plaintiff asserts that the option to redeem the certificate for $75 at Defendants' stores is equivalent to a gift card, as opposed to a coupon.  CAFA requires courts to apply heightened scrutiny to coupon-based settlements.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (citing 28 U.S.C. § 1712(e)).  In CAFA's findings, Congress expressed its concern regarding settlements in which "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value."  Class Action Fairness Act of 2005, Pub. L. No. 109–2, § 2, 119 Stat. 4 (2005).  While Congress does not define "coupon" within the statute, the Senate Judiciary Committee's Report offers examples of problematic coupon-based class action settlements.   For instance, the Committee criticized settlements that provided class members with "a $5 to $10 voucher good for future purchases of particular computer hardware or software products," "a 30 percent discount on selected products" during a one-week time period, "$1 off every subsequent $5 purchase" at a chain of restaurants, and a $55 certificate to use on a purchase of a new crib from a defendant crib producer accused of manufacturing defective cribs.  S. Rep. No. 109–14, at 15 (2005).

The Ninth Circuit recently addressed the distinction between coupons and gift cards for purposes of CAFA.  In *In re Online DVD-Rental Antitrust Litigation*, it held that a settlement that provided one million class members either $12 in cash or a $12 Wal-Mart gift card was not the type of coupon-based settlement that "drew the attention of Congress."  779 F.3d at 950.  In distinguishing the $12 gift card from the examples cited above, the Court emphasized that it was not limited to certain types of products or a certain period of time.  *Id.* at 951.  Further, the gift card did not expire and did not require the claimant to spend any of his or her own money in order to redeem it.  *Id.*  Ultimately, the Court concluded that "gift cards are a fundamentally distinct concept in American life from coupons."  *Id.* at 952; *see also id.* at 951 (citing cases in which district courts considering this issue have not classified gift cards as coupon settlements under CAFA).

The Court finds that the $75 certificate here is not a coupon-based settlement that merits heightened scrutiny under CAFA.  Like the settlement in *In re Online DVD-Rental Antitrust Litigation*, the settlement here provides claimants the option of cash or an amount redeemable in Defendants' stores.  If the claimant chooses to redeem the certificate for $75 at one of Defendants' 145 stores, they are not limited to "select products or services."  *See id*. at 951–52 (emphasizing that "part of what separates a . . . gift card from a coupon is not merely the ability to purchase an entire product as opposed to simply reducing the purchase price, but also the ability to purchase one of many different types of products").  Further, the claimant is not required to spend any of their own money to use the certificate and can instead opt to exchange the certificate for a $25 check.  *See id*. at 951.  Accordingly, the Court does not find that this settlement is one that leaves "class members with coupons or other awards of little or no value."  *See* Class Action Fairness Act of 2005, Pub. L. No. 109–2, § 2, 119 Stat. 4 (2005).

The amount offered in settlement is also particularly favorable in light of Defendants' financial difficulties.  If all 747,635 class members opted to redeem $75 in goods at Defendants' stores, the settlement would be valued at $581,072,625 worth of Defendants' merchandise.[3]  Alternatively, if all class members opted to receive a $25 check, the total settlement value would be $18,690,875.  These figures are substantial.  The recovery per class member is also well within the range of other TCPA settlements.  *See, e.g.*, *In re Jiffy Lube Int'l, Inc. Text Spam Litig*., 2012 WL 4849617, at *2 (S.D. Cal. 2012) (approving certificate for $20 in defendant's goods or $15 in cash); *Rose v. Bank of America*, 2014 WL 4273358 (N.D. Cal. 2013) (approving award amount between $20 and $40 in cash).  The per-member recovery is especially favorable when the class members likely only received one call over the course of the relevant time period.  (*See*

---

[3] The Court acknowledges the difficulties in ascertaining the precise value of 747,635 certificates for $75 redeemable in Defendants' stores.  While the certificate has a cash value, it is still considered a form of non-monetary relief.  *See Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *6 (C.D. Cal. July 21, 2008).

Mot. at 7 n. 3 [contrasting the facts of this case with TCPA cases involving a debt collector who calls a single recipient dozens of times].)

## 2. Remaining Factors

The Court finds that the strength of the Plaintiff's case, when balanced against the risk of further litigation, further weighs in favor of approval. The parties did not settle until after Plaintiff survived a motion to dismiss and the parties engaged in substantial discovery. (*See* Dkts. 68, 72, 73.) Through discovery, Plaintiff was able to obtain information regarding the number of calls made, the number of putative class members, deficiencies in how certain dialing lists secured consent from the persons to be called, and the type of dialing systems used. (Campion Decl. ¶ 9.) The parties then conducted a full-day mediation and several follow-up telephone conferences with Judge Infante, who has mediated some of the largest TCPA settlements in the country. (*Id.* ¶ 2.) The parties and Judge Infante worked together for months in order to negotiate the settlement structure now before the Court. (*Id.* ¶ 3.) The involvement of an experienced mediator following significant discovery indicates that the settlement agreement was non-collusive. *See Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

The settlement agreement also presents a fair compromise in light of the risks and expense of continued litigation. If Plaintiff succeeded in certifying a class and prevailed on the merits, potential damages could be substantially higher than the settlement agreement here. However, continued litigation involved considerable obstacles. For instance, class certification in TCPA cases often turns on whether Defendants have any evidence that the call recipients gave prior express consent. Determining consent can involve individualized issues that defeat commonality and predominance. *See Connelly*,

294 F.R.D. at 577 (noting that class certification in TCPA cases "is warranted only when the 'unique facts' of a particular case indicate that individual adjudication of the pivotal element of prior express consent is unnecessary" (citation omitted)).   Further, even if Plaintiff had been successful, Defendants likely would not have been able to pay the judgment.  (*See* Mot. at 3 n.1 [detailing Defendants' economic difficulties and risk of declaring bankruptcy].)  By reaching a settlement agreement, Plaintiff bypasses these risks and guarantees a tangible and substantial result for the 747,635 class members.

## C.    Attorneys' Fees and Incentive Award

The settlement agreement also provides that Defendants will pay a sum not to exceed $900,000 to cover Plaintiff's attorneys' fees and costs.  The Court acknowledges that a $900,000 award would constitute 4.8% of the low-end estimate of the settlement's value ($18,690,875).  However, because this is not a common-fund settlement, Plaintiff will have to prove that the proposed attorneys' fees and costs are reasonable in light of the specific facts of this case.  Based on the evidence before the Court, it preliminarily approves Plaintiff's proposed attorneys' fees and costs.  The Court will expect Plaintiff's counsel to provide detailed evidence to support their award prior to final approval.

Plaintiff also seeks a $5,000 incentive award to compensate his time and efforts on behalf of the class.  Plaintiff asserts that he spent time meeting with counsel, reviewing and discussing discovery, and responding to written questions and document requests propounded by Defendants.  (Dkt. 99-7 [Declaration of Sean Hartranft] ¶¶ 6, 8.)  When Defendants offered him a Rule 68 offer to dismiss the class action in exchange for money, he declined to do so "for the benefit of the settlement class.  (*Id*. ¶ 7.)  While he did not attend the parties' mediation before Judge Infante, he made himself "available via phone" in case his attorneys needed to speak with him.  (*Id*. ¶ 9.)  He also reviewed the substantive terms of the settlement agreement in detail with his attorneys.  (*Id*. ¶ 11.)  In

light of his involvement in this action over the last three and one-half years, the Court finds that his proposed $5,000 incentive award is reasonable.  *See In re Toys R Us-Del., Inc.—Fair & Accurate Credit Transactions Act Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) (explaining that California district courts typically approve incentive awards between $3,000 and $5,000).

### D.      Settlement Administrator

Plaintiff asks the Court to appoint CPT Group, Inc. ("CPT") as settlement administrator.  CPT has extensive experience providing court-approved notice and administration of class action settlements.  (Dkt. 99-5 [Declaration of Julie N. Green] ¶ 5.)  Indeed, federal courts in California have routinely approved CPT as a class action settlement administrator.  *See*, *e.g.*, *Ruiz v. JCP Logistics, Inc.*, 2016 WL 6156211, at *7 (C.D. Cal. Mar. 10, 2016); *Altamirano v. Shaw Indus., Inc*., 2015 WL 4512372, at *10 (N.D. Cal. July 24, 2015).  Accordingly, the Court appoints CPT as Settlement Administrator.  Any award of administrator expenses will need to be substantiated with detailed evidence.

### E.      Notice of the Proposed Settlement

Finally, Plaintiff seeks approval of the proposed manner and form of the notice that will be sent to the class members.  Rule 23(c)(2)(B) provides that for Rule 23(b)(3) classes, as here, the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Plaintiff proposes a notice protocol that involves both direct mail and print advertising.  Defendants will provide CPT with a Notice List that includes the names, last

known mailing addresses, and cell phone numbers of all known members of the class. CPT will then scrub the data to reduce duplicate records and update mailing address through the National Change of Address (NCOA).  (Green Decl. ¶ 14.)  CPT will mail a short-form postcard notice to the resulting names and addresses that will include a Spanish tag line to direct Spanish-speaking recipients to the settlement website for a copy of the notice in Spanish.  CPT will also publish notice of the action in *USA Today Marketplace*, a national consumer publication.  Both the postcard and the print publication will include the address of the settlement website and a toll-free number to call for more information.  If CPT has reason to believe that notice has not reached at least 80% of the class, the parties will work together to develop a supplemental internet banner notice plan.  (*Id*. ¶ 12.)  The Court finds the proposed manner of notice is adequate.

     The form of notice also meets the requirements of Rule 23(c)(2)(B).  Notice to class members must "clearly and concisely state, in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that the class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion, and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).  Here, the proposed notice provides clear information about the definition of the class and nature of the action, a summary of the terms of the proposed settlement, the process for objecting to the settlement, and the consequences of inaction.  (*See* Dkt. 99-2 Exs. C-1, C-2, C-3.)  The notice will also provide specific details regarding the date, time, and place of the Final Approval Hearing and inform class members that they may enter an appearance.  (*See id*.)

The parties also must comply with certain notice requirements under CAFA. Pursuant to 28 U.S.C. § 1715(b), Defendants were required to serve notice of the filing of the proposed settlement to the appropriate state official of each state in which a class member resides and the appropriate federal official. *See Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 972–73 (E.D. Cal. 2012). There is no evidence before the Court that Defendants complied with this requirement. The proposed order attached to Plaintiff's motion merely states that Defendants will file proof of compliance with CAFA's notice provisions "[n]o later than ten (10) days before the Final Approval Hearing." (Dkt. 99-8 at 5.) This is not sufficient. Defendants will need to file proof of compliance with CAFA in conjunction with Plaintiff's motion for final approval, if not earlier. *See* 28 U.S.C. § 1715(d) ("An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b).").

//

## III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** both provisional certification of the class for settlement purposes and preliminary approval of the settlement agreement.  The Court hereby **APPOINTS** Plaintiff Hartranft as Class Representative, the Law Offices of Douglas J. Campion, APC, the Law Offices of Michael P. Sousa, APC, and Bisnar & Chase LLP as Class Counsel, and CPT Group, Inc. as Settlement Administrator.  The Court also **APPROVES** the proposed notice and orders that it be disseminated to the class as provided in the settlement agreement.  The final approval hearing shall be held on **Monday, October 21, 2019, at 1:30 p.m.**

DATED:    April 18, 2019

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE