UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN HARTRANFT, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TVI, INC., d/b/a SAVERS, INC., and APOGEE RETAIL, LLC.,<br><br>Defendants. | Case No.: SACV 15-01081-CJC-DFM<br><br>ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT [Dkt. 104] AND MOTION FOR ATTORNEYS' FEES AND COSTS, CLASS REPRESENTATIVE INCENTIVE AWARD AND SETTLEMENT ADMINISTRATOR COSTS [Dkt. 103] |

I. INTRODUCTION

In this 2015 Class Action Fairness Act ("CAFA") lawsuit, Plaintiff alleges that Defendant Apogee Retail, LLC ("Apogee"), a subsidiary of Defendant TVI, Inc., d/b/a Savers, Inc. ("Savers"), contacted hundreds of thousands of people without their consent to solicit charity donations. After years of investigation and litigation, including extensive mediation efforts, the parties reached a settlement, which this court preliminarily approved. (Dkt. 100, 101.) Plaintiff now asks the court to grant final

approval of the settlement and the requested attorney fees, costs, and incentive awards. (Dkt. 104 [hereinafter "Mot."]; Dkt. 103 [hereinafter "Fee Mot."].) For the following reasons, the motion is **GRANTED**.

## II. BACKGROUND

Savers is the largest for-profit thrift store chain in North America. (Dkt. 61 [First Amended Complaint, hereinafter "FAC"] ¶ 6.) Apogee solicits funds by telephone for Savers and charities with which Savers contracts. (*Id.* ¶ 7.) Apogee allegedly contacted hundreds of thousands of people, including Plaintiff, without their prior express consent to solicit donations on behalf of the Epilepsy Foundation of America. (*Id.* ¶ 8.) When Plaintiff asked how Apogee got his cell phone number, he was told Apogee purchased lists of cell phone numbers from a third-party vendor. (*Id.* ¶ 15.)

On July 8, 2015, Plaintiff filed this action on behalf of himself and all persons in the United States who received a "non-emergency telephone call" on their cell phone from Apogee by way of an automatic telephone dialing system or prerecorded voice. (*Id.* ¶ 23.) Plaintiff alleges that Defendants used an automatic telephone dialing system to contact individuals' cell phones without express consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.* ("TCPA") and the Federal Communication Commission rules promulgated thereunder. (*See generally id.*)

After at least two sessions before Honorable Edward A. Infante, a JAMS mediator well known for his success in resolving TCPA cases, and additional negotiations after those sessions, the parties reached a settlement (the "Settlement Agreement"). The Settlement Agreement provides that any class member who files an approved claim will receive a certificate that can either be (1) redeemed for $75 in merchandise sold at any of Defendants' 145 Savers or Value Village stores throughout the United States, or

(2) exchanged for a $25 check.  (Dkt. 99-2, Ex. 1 [Settlement Agreement]; Fee Mot. at 4–5.)  The Settlement Agreement also provides that Defendants will pay all costs of notice and claims administration (estimated at $420,000), $900,000 in Plaintiff's attorney fees and costs, and a $5,000 incentive payment to Plaintiff Sean Hartranft, all subject to this Court's approval.  (*See id*.)

The Court granted preliminary approval of the Settlement Agreement on April 18, 2019, and appointed CPT Group, Inc. ("CPT") as settlement administrator.  (Dkt. 101.)  CPT mailed postcard Class Notices to 747,635 Settlement Class Members, made a USA Today publication, and set up a settlement hotline, case-specific email address, and settlement website.  (Dkt. 104-5 [Declaration of Ari S. Sarich on Behalf of Claims Administrator with Respect to Motion for Final Approval, hereinafter "Sarich Decl."] ¶¶ 6–19; Exs. B–D.)  CPT received 48,061 timely claims, 11,438 of which it has determined to be valid.  (*Id.* ¶¶ 23, 29.)  Sixty-four people requested to be excluded from the class, thirty-four of which requests CPT determined to be valid and timely.  (*Id.* ¶ 21.)  No one has objected to the settlement.  (Mot. at 2.)

## III.  DISCUSSION

In assessing whether to grant final approval, the Court analyzes (1) the propriety of granting class certification for purposes of settlement, (2) the fairness of the settlement, and (3) the reasonableness of the fees, costs, and incentive award requested.

### A.  Class Certification

A plaintiff seeking class certification must satisfy two sets of requirements under Federal Rule of Civil Procedure 23: (1) the Rule 23(a) requirements concerning numerosity, commonality, typicality, and adequacy, and (2) the requirement that the

action fall within one of the three "types" of classes described under the subsections of Rule 23(b). In this case, Plaintiff seeks certification of the class pursuant to Rule 23(b)(3), which allows certification if a court "finds the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); (*see* Mot. at 8–9). The Court previously concluded that Plaintiff presented sufficient evidence to show that the proposed class satisfied the numerosity, commonality, typicality, and adequacy requirements under Rule 23(a), as well as the predominance and superiority requirements under Rule 23(b)(3). (*See* Dkt. 100 at 4–8.) Having reviewed those elements again, the Court adopts its prior analysis with respect to class certification and grants certification of the proposed class for purposes of settlement only.

### B.   Fairness of the Settlement

The Court now evaluates the fairness of the settlement. Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), a settlement of class claims requires court approval. Fed. R. Civ. P. 23(e). This is because "[i]ncentives inhere in class-action settlement negotiations that can, unless checked through careful district court review of the resulting settlement, result in a decree in which the rights of class members, including the named plaintiffs, may not be given due regard by the negotiating parties." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (alterations and quotations omitted).

Under Federal Rule of Civil Procedure 23, the Court must "determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 959 (citation and quotation marks omitted). In considering whether this standard is met,

a district court must consider various factors, including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement." *Id.* (citation and quotation marks omitted). Having considered the *Staton* factors, the Court finds the Settlement Agreement fundamentally fair and reasonable.

> 1. Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

The strength of Plaintiff's case, when balanced against the risks and obstacles inherent in continued litigation, weighs in favor of granting final approval of the Settlement Agreement. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041–42 (N.D. Cal. 2008) (discussing how a class action settlement offered an "immediate and certain award" in light of significant obstacles posed through continued litigation); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. 2007) ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement.").

The parties did not settle until after Plaintiff survived a motion to dismiss and the parties engaged in substantial discovery. (See Fee Mot. at 4; Dkts. 68, 72, 73.) In the discovery process, Plaintiff obtained information regarding the number of calls made, the number of putative class members, deficiencies in how certain dialing lists secured consent from the persons to be called, and the type of dialing systems used. (Dkt. 99-2 ¶ 9.) The parties then conducted a full-day mediation and several follow-up telephone conferences with Judge Infante, who has mediated some of the largest TCPA settlements in the country. (*Id.* ¶ 2.) The parties and Judge Infante worked together for months to

negotiate the settlement structure now before the Court.  (*Id.* ¶ 3.)  The involvement of an experienced mediator following significant discovery, while not conclusive, is a helpful barometer for the Court, including because it indicates that the settlement agreement was non-collusive.  *See Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

The Settlement Agreement also presents a fair compromise in light of the risks and expense of continued litigation.  If Plaintiff succeeded in certifying a class and prevailed on the merits, potential damages could be substantially higher than those reflected in the Settlement Agreement.  However, continued litigation would have involved considerable obstacles.  For instance, class certification in TCPA cases often turns on whether Defendants have any evidence that the call recipients gave prior express consent.  Determining consent can involve individualized issues that defeat commonality and predominance.  *See Connelly v. Hilton Grand Vacations Co.*, 294 F.R.D. 574, 577 (S.D. Cal. 2013) (noting that class certification in TCPA cases "is warranted only when the 'unique facts' of a particular case indicate that individual adjudication of the pivotal element of prior express consent is unnecessary" (citation omitted)).

Indeed, while maintaining the strength of his case, Plaintiff acknowledges that Defendants had "a number of potentially case-dispositive defenses." (Mot. at 18.)  For example, Defendants argue that Plaintiff would not be able to certify the class, that the class Plaintiff asserts in his complaint is unascertainable, and that individual issues predominate over common questions of law and fact.  (*Id.*)  Plaintiff represents that Defendants could make other arguments undermining his position, including that an Automatic Telephone Dialing System was not used, or take the position that a "called party" under the TCPA refers to the intended recipient of a call, and not the person actually called.  (*Id.*)

Further, even if Plaintiff had been successful, Defendants likely would not have been able to pay the judgment. (See Dkt. 99-1 [Motion for Preliminary Approval] at 3 n.1 [detailing Defendants' economic difficulties and risk of declaring bankruptcy].) By reaching a settlement, Plaintiff bypasses these risks and guarantees a tangible and substantial result for the 747,635 class members.

Given factors including the cost and risks of further litigation and Defendants' financial difficulties, this factor weighs in favor of approving the settlement.

### 2. *Amount Offered in Settlement*

The Court finds that the amount offered is fair and reasonable. Each class member submitting a valid claim will receive a certificate worth either $75 to purchase products in Defendants' stores (which must be used in one visit), or $25 cash.[1] Defendants' stores sell donated used clothing and household goods, so their inventory is priced below the certificate value, and stores are located in the geographical areas where the contested calls were made, so most claimants should be able to use the certificates. (Mot. at 13; *see* Dkt. 99-6 [Declaration of Scott Estes] ¶ 4 [noting that items sold in Defendants' stores are "generally less than $5"].) The $75 certificate is transferrable and has no expiration date.

Additionally, as the Court explained on preliminary approval, the amount offered in settlement is particularly favorable given Defendants' financial difficulties, which precluded a common-fund settlement. (Mot. at 20; Dkt. 99-2 ¶ 2.) If all 747,635 class members opted to redeem $75 in goods at Defendants' stores, the settlement would be

---

[1] As the Court explained on preliminary approval, the $75 certificate here is not a coupon-based settlement that merits heightened scrutiny under CAFA. (Dkt. 100 at 10–11.)

valued at $581,072,625 worth of Defendants' merchandise. Alternatively, if all class members opted to receive a $25 check, the total settlement value would be $18,690,875. These figures are substantial.

The recovery per class member is also well within the range of other TCPA settlements receiving final approval. *See, e.g.*, *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 2012 WL 4849617, at *2 (S.D. Cal. 2012) (approving certificate for $20 in defendant's goods or $15 in cash); *Rose v. Bank of America*, 2014 WL 4273358 (N.D. Cal. 2013) (approving settlement where each class member received between $20 and $40 in cash). The per-member recovery is especially favorable considering that the class members likely only received one call over the course of the relevant time period.

In the Court's view, the amount offered in settlement is reasonable. This factor weighs in favor of approving the settlement.

> 3. *Extent of Discovery Completed, Stage of Proceedings, and Experience and Views of Counsel*

The Settlement Agreement is also reasonable given the stage of this litigation. Where the "parties have sufficient information to make an informed decision about settlement," this factor weighs in favor of approving the settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (internal citation and quotation marks omitted). Indeed, "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 889 (C.D. Cal. 2016).

The parties here gathered enough information over four years of substantial discovery and litigation to make an informed decision about whether the terms of this

Settlement Agreement were fair. Plaintiff's counsel are experienced class-action litigators, the parties conducted extensive discovery and engaged in dispositive motion practice, and there were multiple mediation sessions with Judge Infante. (*See* Fee Mot. at 4.) These facts, among others, make the Court confident that the parties were able to realistically value Defendants' liability and assess the risk of continuing to litigate. The parties' extensive litigation and negotiation allowed them to reasonably evaluate the cost, duration, and risk of further litigation.

The Court is satisfied that the parties reached the Settlement Agreement after developing a full and fair understanding of the merits and risks of the case, and negotiating at arm's length. This factor weighs in favor of approving the settlement.

### 4. Reaction of Class Members

Following the Court's preliminary approval, CPT used a multi-pronged notice campaign to reach class members. According to a CPT Senior Case Manager, CPT:

- Mailed postcard Class Notices to all 747,635 settlement class members identified in a data file from Apogee with names, last known mailing addresses, and cell phone numbers of individuals identified as Settlement Class Members, and performed a National Change of Address search and skip tracing to update the list, with 99.57% of the postcards successfully delivered, Sarich Decl. ¶¶ 5, 13, 16–17,
- Created a settlement website with copies of the Settlement Agreement, Long Form Notice (in English and Spanish), Claim Form, FAC, and Order Granting Preliminary Approval available for download, a Frequently Asked Questions page and timeline, and a link to file a claim electronically and instructions to print a hard copy for mailing, *id.* ¶¶ 8–10,

- Created a case-specific 24-hour toll-free telephone number, where callers could hear FAQs and leave a voicemail, *id.* ¶ 6,
- Created an email address for Settlement Class Members to communicate with CPT, *id.* ¶ 7, and
- Caused the Publication Notice to be published in USA Today, *id.* ¶ 12.

The deadline for class members to submit a claim form was August 15, 2019. (*Id.* ¶ 23.) CPT received 48,061 timely claims—47,445 electronically and 616 by mail. (*Id.*) CPT has determined 11,438 of those claims to be valid. (*Id.* ¶ 29.) While this number may appear to be low, the fact that a small percentage of people on Defendants' list submitted claims, or that a small percentage of submitted claims were valid, does not concern the Court. As Plaintiff notes, courts have granted final approval over TCPA settlements where claims rates were even lower than the rate here. (Mot. at 17.) And here, class notice was published in USA Today, and republished by others, including "Hustler Money Blog," "Class Actions Reporter," and "Class Action Rebates." (*Id.* at 15 n.3.) It is possible, even likely, that people submitted a simple claim form on the off chance they were part of the class, even though they did not recall receiving a phone call from Apogee. This does not dissuade the Court that the settlement is fair or reasonable.

Additionally, only thirty-four people timely and validly requested to be excluded from the settlement class. (*Id.* ¶ 21.) Comparing this number to the over 740,000 postcards successfully delivered and 48,000 claims made, the reaction of the class has been very positive, and this factor favors final approval. *See Mego Fin. Corp.*, 213 F.3d at 459 (concluding that this factor supported conclusion that district court did not abuse its discretion in approving settlement where "[o]nly one of the 5,400 potential class members to whom notice of the proposed Settlement and Plan of Distribution was sent chose to opt-out of the class"); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a

proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.").

Accordingly, the Court finds the Settlement Agreement fair, adequate, and reasonable under the *Staton* factors.

### 5. Rule 23(e)(2) Factors

The Court must also find the settlement "fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2). There is substantial overlap between these factors and the *Staton* factors, so the Court does not repeat itself here. The Court has considered these factors and finds that the settlement is fair, reasonable, and adequate.

//
//

### C. Attorney Fees and Costs, and Plaintiff's Incentive Award

Plaintiff's counsel also seek final approval of their request for $900,000 in attorney fees and expenses, and $5,000 for an incentive payment to the class representative. (Fee Mot. at 1.) The Court found at the preliminary approval stage that the request for attorney fees and incentive award appeared reasonable, (Dkt. 100 at 13–14), and the Court makes the same finding here.

#### 1. Attorney Fees and Costs

A district court has the authority and the duty to determine the fairness of attorney fees in a class action settlement. *See Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999). The amount of fees awarded rests ultimately in the court's sound discretion. *Evans v. Jeff D.*, 475 U.S. 717, 736 n.26 (1986), *superseded by statute on other grounds*.

Plaintiff's counsel seek $900,000 in attorney fees and costs based on their lodestar, with a multiplier of 1.24. (Fee Mot. at 1; Dkt. 105 [Supplemental Brief in Support of Fee Mot.] at 1.) The attorney fees and costs will be paid separate from and in addition to the settlement proceeds given to class members. (*Id.* at 1 n.1.) The Court finds the fees requested are reasonable.

The first step in the lodestar method is to multiply the number of hours counsel reasonably expended on the litigation by a reasonable hourly rate. *See Hanlon v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir. 1998). Class counsel represent that their total lodestar for three law firms is $664,245.50.

The claimed lodestar represents 1,093.9 hours of work, spent on (1) investigating the claims of the Plaintiff and Class Members; (2) conducting legal research regarding and preparing opposition briefs opposing Defendants' motions to stay, renew the stay, and to dismiss; (3) conducting formal and informal discovery; (4) engaging in particularly difficult settlement negotiations that spanned many months, preceded by a full-day mediation and several follow-up telephone mediation conferences; (5) reviewing confirmatory discovery and data; (6) drafting the Settlement Agreement and all supporting documents and exhibits; (7) drafting the preliminary approval motion and supporting documents; (8) overseeing settlement administration; and (9) responding to Class Member inquiries.  (Fee Mot. at 8; Dkt. 103-2 [Campion Decl. in Support of Fee Mot., hereinafter "Campion Decl."] Ex. 1; Dkt. 103-3 [Chase Decl. in Support of Fee Mot.] Ex. 6; Dkt. 103-4 [Sousa Decl in Support of Fee Mot.] Ex. 1.)  There is nothing in the record to suggest that any of the hours claimed should be disallowed.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002).

That number of hours is multiplied by hourly rates of $750 for Douglas J. Campion of Law Offices of Douglas J. Campion, APC; $850 for Brian D. Chase, $600 for Jerusalem F. Beligan, and $200 for Javier R. Ruiz of BisnarChase LLP; and $500 for Michael P. Sousa. of Law Offices of Michael P. Sousa, APC.  (Fee Mot. at 7.)  The Court finds these rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1994).

Plaintiff's counsel seek a 1.24 multiplier of this lodestar, bringing the requested fees to $885,665.  (Fee Mot. at 9; Dkt. 105 at 1.)  They argue a multiplier is appropriate because of the results achieved, especially given Defendants' financial situation, and the risks they undertook.  (Fee Mot. 9–14; *see* Campion Decl. ¶¶ 5–6.)  The Court finds this multiplier reasonable in light of the complexity of the case, especially given Defendants'

financial situation, the risks involved, the length of the litigation, the contingency basis on which counsel worked, and the work class counsel had to forego given its work on this case. *See Vizcaino*, 290 F.3d at 1050–51 (finding no abuse of discretion in 3.65 mulitplier); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 955 (9th Cir. 2015).

The Court has also analyzed the $14,335 in costs requested and finds that they are reasonable, were necessary to the prosecution of this litigation, were the sort of expenses normally billed to paying clients, and were made for the benefit of the settlement class. (Fee Mot. at 15–16.)

The Court finds the amount of fees and costs requested is both fair and reasonable given factors including the amount of hours reasonably spent on the litigation, counsel's efforts in litigating this years-long case, the results achieved, and the risks inherent in continued litigation. Class counsel took on a contingency basis claims with significant potential problems of proof against Defendants with financial problems, and managed to negotiate a settlement of significant value. The lodestar is reasonable and the Court will award it.

### 2. *Plaintiff's Incentive Award*

Plaintiff also seeks an incentive award of $5,000. Courts routinely approve this type of award to compensate representative plaintiffs for the services they provide and the risks they incur during class action litigation. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 499 (E.D. Cal. 2010). When evaluating the reasonableness of an incentive award, courts may consider several factors, including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions," and

the time the plaintiff spent pursing the litigation. *Staton*, 327 F.3d at 977 (citation and quotation marks omitted).

The named plaintiff in this case has been involved since the beginning. (Fee Mot. at 18.) He spent time meeting with counsel, reviewing and discussing discovery, and responding to written questions and document requests propounded by Defendants. (*Id.*; Dkt. 99-7 ¶¶ 6, 8.) When Defendants offered him a Rule 68 offer to dismiss the class action in exchange for money, he declined to do so for the benefit of the settlement class. (Dkt. 99-7 ¶ 7.) While he did not attend the parties' mediation before Judge Infante, he made himself "available via phone" in case his attorneys needed to speak with him. (*Id.* ¶ 9.) He also reviewed the substantive terms of the settlement agreement in detail with his attorneys. (*Id.* ¶ 11.)

Under comparable circumstances, courts have approved similar awards to lead plaintiffs. *See, e.g.*, *Vasquez*, 299 F.R.D. at 491 (awarding $5,000); *In re Toys R Us-Del., Inc.—Fair & Accurate Credit Transactions Act Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) (explaining that California district courts typically approve incentive awards between $3,000 and $5,000). The Court finds that the requested $5,000 award is reasonable in light of the significant time and effort Plaintiff expended over this four-year litigation, and the actions he took to protect the interests of the class.

//
//
//
//
//
//
//

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for final approval of the Settlement Agreement is **GRANTED**. Plaintiff's counsel are awarded $900,000 in attorney fees and costs, and Plaintiff Sean Hartranft is awarded $5,000 for his service as class representative. In addition, Defendants shall be responsible for payment of the costs of notice and claims administration CPT incurred (estimated in the Settlement Agreement to be $420,000, and estimated by CPT more recently to be $421,000, Dkt. 104-5 ¶ 32).

DATED: October 21, 2019

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE